Richard A Roth, Esq. (to be admitted *pro hac vice*)
The Roth Law Firm, PLLC
295 Madison Avenue, Fl 2
New York, New York 10017
Tel.: (212) 542-8882
rich@rrothlaw.com

Jamie Campbell, Esq. SBN 343318
JC Law, P.C.
7760 Hollywood Blvd., No. 303
Los Angeles, California
Tel 714.767.6807
jamie@jclawpc.com

Attorneys for Plaintiff
ADRIAN THOMAS SAVITT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

ADRIAN THOMAS SAVITT, an individual, professionally known as "The Tommy Lama,"

Plaintiff,

v.

21ST CENTURY VARIETY ENTERTAINMENT, INC., a Florida corporation, d/b/a Foster Entertainment Group and Agent Acts; and GLEN OWEN FOSTER, II, an individual,

Defendants.

Case No. ________________

**COMPLAINT FOR:**
(1) BREACH OF FIDUCIARY DUTY;
(2) FRAUD (CONCEALMENT);
(3) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; AND
(4) ACCOUNTING

**DEMAND FOR JURY TRIAL**

Plaintiff Adrian Thomas Savitt ("Plaintiff" or "Mr. Savitt"), by and through his undersigned counsel, alleges as follows against Defendants 21st Century Variety Entertainment, Inc. ("21st Century") and Glen Owen Foster, II ("Foster," and together with 21st Century, "Defendants"). Allegations concerning Plaintiff and his own acts are made on personal knowledge; all other allegations are made on information and belief formed after reasonable inquiry, and are likely to have further evidentiary support after a reasonable opportunity for discovery, particularly because the relevant records are in Defendants' exclusive possession.

**NATURE OF THE ACTION**

1. For more than four years, from early 2022 until May 4, 2026, Defendants acted as Mr. Savitt's agent and representative in connection with his work as a guest comedian aboard Carnival Cruise Line ships. Defendants presented him with offers of work, communicated his acceptances, coordinated his schedule, served as the sole channel between Mr. Savitt and Carnival, invoiced Carnival in 21st Century's own name, received every dollar Carnival paid for Mr. Savitt's performances into 21st Century's corporate account, kept ten percent, and remitted the balance to him. Foster signed Mr. Savitt's annual Carnival contracts as his "Agent" and held himself out in his correspondence as Mr. Savitt's "Talent Representative."

2. An agent who takes control of his principal's career and his principal's money owes that principal the highest duties of loyalty, candor, and care. Defendants honored none of them. Throughout the relationship, Defendants operated without the talent agency license required by Florida, where they are based, and by California, where Mr. Savitt lives, and they concealed that fact from him while collecting commissions on his earnings. 21st Century did not obtain a Florida talent agency license until on or about July 23, 2026, and did not even register to do business in California until July 17, 2026,

in each case only after Mr. Savitt raised the licensing issue.

3. In the spring of 2026, Foster brought Lucas Bohn into his agency business. Within weeks, Defendants told Mr. Savitt that they had "concerns regarding alignment within the cruise space and our agency." Then, on May 4, 2026, in a single email copied to Bohn, Foster informed Mr. Savitt that "the agency is releasing you from representation," and in the same breath announced that Carnival had "decided to release you from their roster" and that "all future contracts have been canceled due to 'underwhelming rating.'" That explanation cannot be squared with Defendants' own account that Carnival had raised Mr. Savitt's pay rate over time "based on ratings," or with the twelve engagements Carnival had booked for him through December 2026.

4. Defendants' conduct cost Mr. Savitt twelve booked engagements worth $21,042.50 to him after Defendants' commission, and an established Carnival relationship that paid him $44,236.00 in 2025 alone, before additional "fallout" replacement bookings and extra shows. Mr. Savitt brings this action to recover those losses, damages for destroying his relationship with Carnival Cruises which would have grossed an additional $150,000, to compel Defendants to account for every dollar they received from his work, to require Defendants to disgorge the commissions they took while breaching their duties to him, and to obtain punitive damages.

## THE PARTIES

5. Plaintiff Adrian Thomas Savitt is an individual who resides in Los Angeles, Los Angeles County, California, and is a citizen of the State of California. Mr. Savitt is a professional stand-up comedian who performs under the name "The Tommy Lama."

6. Defendant 21st Century Variety Entertainment, Inc. is a corporation organized under the laws of the State of Florida with its principal place of business at 346 Silver Palms Circle, Davenport, Florida 33837. 21st

Century does business under the names "Foster Entertainment Group" (or "FEG") and "Agent Acts," and through the website www.AgentActs.com. On July 17, 2026, 21st Century filed a Statement of Information with the California Secretary of State (File No. BA20261468997) in which it described its type of business as "Entertainment Agency" and designated a registered agent for service of process in California. 21st Century is a citizen of the State of Florida.

7. Defendant Glen Owen Foster, II is an individual who, on information and belief, resides in Polk County, Florida, and is a citizen of the State of Florida. Foster is the founder and President of 21st Century and, according to its July 17, 2026 Statement of Information, its Chief Executive Officer, Chief Financial Officer, Secretary, and sole director. Foster personally directed, authorized, and participated in each of the acts and omissions alleged in this Complaint, and is personally liable for the torts in which he participated regardless of whether he acted on behalf of 21st Century.

8. At all relevant times, each Defendant was the agent of the other and acted within the course and scope of that agency, and each Defendant authorized, ratified, and accepted the benefits of the other's conduct alleged herein.

9. Lucas Bohn is an individual who identifies himself as President of BoJo Entertainment LLC. Bohn is not named as a defendant at this time. Plaintiff reserves the right to seek leave to amend to add Bohn, BoJo Entertainment LLC, or any other person or entity that discovery shows participated in the conduct alleged herein.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of California. Each Defendant is a citizen of Florida. The amount in controversy exceeds $75,000, exclusive of interest and costs.

11. This Court has specific personal jurisdiction over each Defendant because Defendants purposefully directed their conduct at California and purposefully availed themselves of the privilege of conducting activities in California, and Plaintiff's claims arise out of and relate to those contacts. Among other things, for more than four years Defendants: (a) undertook to represent a California resident in his professional work; (b) regularly communicated with Plaintiff in California by email, telephone, and text message, including to offer him engagements and to transmit Carnival's offers to him; (c) received Plaintiff's compensation and remitted his share to him in California; (d) issued to Plaintiff, at his Los Angeles address, an IRS Form 1099-NEC reporting $44,236.00 in compensation paid to him in 2025; (e) listed Plaintiff's Los Angeles home address on the Carnival agreements that Foster signed as Plaintiff's "Agent"; and (f) arranged engagements for Plaintiff that embarked from and returned to California ports, beginning with Plaintiff's first engagement under Defendants' representation aboard the Carnival Radiance in March 2022, which concluded in Long Beach, California, and including engagements aboard the Carnival Panorama, which, on information and belief, sails from Long Beach, California. Defendants also sent into California the May 4, 2026 email that terminated Plaintiff's representation and announced the loss of his Carnival engagements, knowing that the resulting harm would be suffered by Plaintiff in California. Defendants have since registered 21st Century with the California Secretary of State as an "Entertainment Agency," appointed a California agent for service of process, applied to the California Labor Commissioner for a talent agency license, and appeared in a proceeding before the California Labor Commissioner concerning the very relationship at issue here.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's

claims occurred in this District. Plaintiff resided in this District throughout the relevant period; Defendants directed their communications, representations, omissions, and payments to him here; engagements that Defendants arranged embarked from and returned to ports in this District; and Plaintiff suffered his injuries here.

13. Assignment to the Western Division is appropriate because Plaintiff resides in Los Angeles County and a substantial part of the events giving rise to the claims occurred there.

## FACTUAL ALLEGATIONS

### A. Carnival's Guest Entertainer Program

14. Carnival Cruise Line ("Carnival") engages professional comedians as "Guest Entertainers" to perform aboard its ships, typically for a single voyage or a short series of shows. Each engagement is a separate booking. Carnival pays for each completed engagement by invoice, generally on terms of net 15 days.

15. Under Carnival's 2026 Guest Entertainer Welcome Packet, Carnival's booking decisions depend on each entertainer's availability, the fit of the entertainer's act with a particular voyage, and the entertainer's accumulated performance ratings: "The higher your rating average is, the more bookings you'll receive." In addition to scheduled engagements, Carnival offers last-minute replacement engagements, known as "fallouts," when another entertainer becomes unavailable, and Carnival's shipboard entertainment directors from time to time request extra performances for additional pay.

16. Mr. Savitt first performed for Carnival as a Guest Entertainer in 2011 and 2012. According to Defendants, after Carnival resumed operations following the COVID-19 suspension of cruising, Carnival required guest entertainers to work through an "Agent of Record," and did not permit Mr. Savitt to deal with Carnival directly.

**B. Defendants Become Mr. Savitt's Agent**

17. In or about early 2022, and in any event no later than March 2022, Mr. Savitt and Defendants agreed orally that Defendants would represent Mr. Savitt in connection with his professional entertainment work, including by obtaining, arranging, and administering engagements for him with Carnival, in exchange for ten percent of the compensation Mr. Savitt earned from the engagements covered by the arrangement (the "Representation Agreement"). The parties never reduced the Representation Agreement to a signed writing.

18. Defendants then took charge of Mr. Savitt's return to Carnival. On or about February 22, 2022, Defendants obtained a Carnival employment application, transmitted it to Mr. Savitt, and submitted his completed application to Carnival. Defendants likewise obtained, transmitted, and submitted the background-check materials Carnival required. Defendants then pre-filled Carnival's Personalized Guest Entertainer Independent Contractor Agreement to designate 21st Century, at its Davenport, Florida address, as Mr. Savitt's "Agent," sent it to Mr. Savitt for signature, and countersigned it.

19. Mr. Savitt's first engagement under Defendants' representation took place aboard the Carnival Radiance from March 18 to March 21, 2022, concluding in Long Beach, California. 21st Century invoiced Carnival in its own name for that engagement on March 16, 2022, in the amount of $1,530.00.

20. Each year thereafter, Mr. Savitt executed a new Carnival Personalized Guest Entertainer Independent Contractor Agreement. The agreements for 2024, 2025, and 2026 each identify 21st Century as Mr. Savitt's "Agent," list 21st Century's Davenport, Florida address as the "Agent Address," and bear Foster's name in the agent's signature block. The 2026 agreement, which lists Mr. Savitt's Los Angeles home address, identifies "Agent: Glen O Foster, II" and is signed by Foster as Agent.

21. The Carnival agreements confirm the agent's responsibilities to the

entertainer. Paragraph 19(c) of the incorporated Terms and Conditions provides that "Agent shall be responsible for compliance by Entertainer with all of his/her obligations under this Agreement and for advising Entertainer of all such obligations," and refers to "standard agent/representation commissions between Agent and Entertainer." Paragraph 14 provides that Carnival may give notice of termination "to Agent or Entertainer."

22. From March 2022 through May 3, 2026, Defendants controlled every material aspect of Mr. Savitt's relationship with Carnival. As Foster himself has described it, Carnival "transmitted official offers to our company, which we forwarded to Mr. Savitt for acceptance or declination." Defendants communicated Mr. Savitt's acceptances, coordinated his schedule, invoiced Carnival in 21st Century's name, and received Mr. Savitt's compensation. In Foster's words: "Once funds hit our corporate account, our company deducted our agreed administrative fee and disbursed the remaining balance to Mr. Savitt." Defendants thus held Mr. Savitt's money, in their own account, every time he performed.

23. Defendants also served as the channel through which Carnival communicated about Mr. Savitt's performance and standing. Foster has described Defendants' role as including "addressing carrier concerns regarding performance content and corporate compliance." Mr. Savitt depended on Defendants to inform him of any such concerns, to advise him, and to protect and advance his interests with Carnival.

24. Defendants did not merely process paperwork. They solicited and offered work. For example, on April 10, 2026, Foster, signing as "President & Talent Representative" of 21st Century, emailed his "Foster CCL Comedy Roster," of which Mr. Savitt was a member, listing three sets of available Carnival dates and stating: "if you are available and interested, please let me know and I can let the CCL Shoreside team know." On March 11, 2026, Foster

emailed approximately forty-five performers, including Mr. Savitt, to "welcome the following acts to the Foster Roster" and to describe the roster as a "team." Foster's email signature identified him as "President & Founder | Talent & Artist Representation" of "Foster Entertainment Group (FEG) in association with 21st Century Variety Entertainment, Inc. (Agent Acts)."

25. Defendants simultaneously represented a large roster of other comedians who competed with Mr. Savitt for the same limited number of Carnival engagements, and from whose Carnival compensation Defendants likewise took commissions. Defendants never disclosed to Mr. Savitt how they allocated Carnival opportunities among the comedians on their roster, or how they managed the conflicts of interest that arrangement created.

26. Mr. Savitt's Carnival work under Defendants' representation was substantial and growing. In some years he performed more than twenty Carnival engagements. He also regularly received one or two fallout engagements per month and was paid additional compensation for extra shows requested by Carnival entertainment directors. By Foster's own account, Carnival raised Mr. Savitt's per-engagement rate over time, "increasing incrementally based on ratings." For calendar year 2025 alone, 21st Century reported on IRS Form 1099-NEC that it paid Mr. Savitt $44,236.00, which represents his compensation after Defendants' ten-percent commission.

27. From March 2022 through May 2026, Defendants retained ten percent of Mr. Savitt's compensation from every engagement covered by the Representation Agreement. The precise amount of those commissions is within Defendants' exclusive knowledge and records, but is substantial; Defendants' commission on Mr. Savitt's 2025 Carnival earnings alone was approximately $4,915.

**C. Defendants Operated Without Required Talent Agency Licenses and Concealed That Fact**

28. Florida law prohibits any person from owning, operating, or carrying on the business of a talent agency in Florida without a license issued by the State. Fla. Stat. § 468.403. Operating a talent agency without a license is a crime under Florida law. Fla. Stat. § 468.413. California law likewise prohibits any person from engaging in or carrying on the occupation of a talent agency, including procuring, offering, promising, or attempting to procure engagements for an artist, without a license from the California Labor Commissioner. Cal. Lab. Code §§ 1700.4, 1700.5.

29. At no time from 2022 until at least July 2026 did 21st Century or Foster hold a Florida talent agency license. On information and belief, 21st Century first obtained a Florida talent agency license on or about July 23, 2026, after Mr. Savitt had raised the licensing issue with Defendants and had submitted complaints to Florida and California authorities.

30. Neither 21st Century nor Foster has ever held a California talent agency license. 21st Century did not register with the California Secretary of State until July 17, 2026, and only thereafter pursued an application for a California talent agency license, which, according to Defendants, remained in processing as of September 2026.

31. Defendants never disclosed to Mr. Savitt that they were unlicensed. To the contrary, throughout the relationship Defendants held themselves out as a legitimate talent agency, referring to "our agency" and "the agency," to Foster as "Talent Representative" and "Talent & Artist Representation," and to the performers they represented as the "Foster Roster." When Defendants ended the relationship, they issued a formal "Release from Representation" confirming that Mr. Savitt was "no longer represented by 21st Century Variety Entertainment, Inc. (Agent Acts)" and was "free to seek cruise

ship representation with another agency."

32. Mr. Savitt reasonably relied on Defendants, as his agents and fiduciaries, to be lawfully authorized to conduct the business they undertook for him. Had Defendants disclosed that they were operating without the licenses required by law, Mr. Savitt would not have entrusted his career and his compensation to them and would not have permitted them to retain commissions from his earnings. Mr. Savitt did not learn, and in the exercise of reasonable diligence could not have learned, that Defendants were unlicensed until in or about June 2026.

**D. Bohn, the "Alignment" Concerns, and the May 4, 2026 Termination**

33. In or about early 2026, Foster brought Lucas Bohn, President of BoJo Entertainment LLC, into his agency business. On April 7, 2026, Bohn emailed Mr. Savitt: "My name is Lucas Bohn. I work with Glen in his agency. Glen asked me to reach out about NCL, RC and Carnival." On information and belief, by no later than May 2026, Foster and Bohn had formed a business partnership, joint venture, or similar arrangement through which they jointly conducted, and shared in the proceeds of, Defendants' cruise-line talent business.

34. In the weeks that followed, Foster and Bohn raised with Mr. Savitt what Foster later described as "concerns regarding alignment within the cruise space and our agency." Specifically, Foster and Bohn informed Mr. Savitt that they wanted him to change his act to confirm their beliefs about what comedy should be. They also told him to stop posting on social media about his cruise assignment, stating that such posts did not reflect the agency's "brand." They told Mr. Savitt that he was free to post whatever he wished in connection with his land engagements. Foster and Bohn represented that if Mr. Savitt complied, they would then showcase him to other cruise lines. Mr. Savitt agreed to accommodate these requests. Thereafter, following a social media post Mr.

Savitt made regarding a land engagement, Foster and Bohn released him from the agency. Liam Blume was privy to these conversations and witnessed them firsthand. Mr. Savitt responded by sharing his own perspective and direction for his career.

35. On Saturday, May 2, 2026, Foster sent an email titled "CCL Reminders," which he introduced as "very important and a word to the wise," to his Carnival roster, including Mr. Savitt. Foster repeated in that email, four separate times, the sentence: "If you get let go, there is nothing I can do to assist you." On information and belief, at the time he sent that email, Foster knew of, or had participated in, communications with Carnival concerning Mr. Savitt's continued engagement, and sent the email to lay the groundwork for disclaiming any responsibility for what was about to happen to Mr. Savitt.

36. Mr. Savitt completed his final two Carnival engagements, aboard the Carnival Panorama from April 25 to 28, 2026, and aboard the Carnival Venezia from April 29 to May 3, 2026. Carnival's records reflect that he signed off the Carnival Venezia on May 3, 2026.

37. The next morning, May 4, 2026, Foster emailed Mr. Savitt under the subject line "Agency Release." Foster copied Bohn and Robert Behr, whom Foster identifies as the contact for payroll questions. Foster wrote, in relevant part:

> As discussed in prior conversations, including with Lucas, we have addressed concerns regarding alignment within the cruise space and our agency. While I respect your direction, I must make decisions based on the standards and expectations of our agency and its partners. Effective immediately, the agency is releasing you from representation. Formal notice is included with this email. Additionally, I have received communication from Carnival Cruise Line that they have decided to release you from their roster. As a result, all future contracts have been canceled due to 'underwhelming rating.'

38. Attached to the email was a signed "Release from Representation," effective May 4, 2026, on 21st Century letterhead and signed by Foster as President.

39. Foster's May 4, 2026 email was the first notice Mr. Savitt received that Carnival had removed him from its roster. Carnival's decision, and whatever communications preceded it, passed through Defendants. Defendants have never provided Mr. Savitt with Carnival's communication, any rating or review data, or any further explanation of the decision.

40. The stated reason, an "underwhelming rating," is contradicted by Defendants' own account and by Carnival's own conduct. Foster has stated that Carnival increased Mr. Savitt's pay rate "incrementally based on ratings" through late 2025. Carnival's published practice is to give more bookings to entertainers with higher ratings, and as of May 2026 Carnival had booked Mr. Savitt for twelve further engagements extending through the end of December 2026.

41. On information and belief, Carnival's decision to remove Mr. Savitt from its roster was caused or procured, in whole or in part, by communications from Foster and/or Bohn to Carnival concerning Mr. Savitt that were false, misleading, or made in disregard of Mr. Savitt's interests, and that Defendants made to serve their own interests, the interests of Bohn, and the interests of the other performers on Defendants' roster, after Mr. Savitt declined to conform to Defendants' "alignment" demands. In the alternative, Defendants learned of Carnival's concerns before Carnival acted and, in breach of their duties, failed to inform Mr. Savitt of those concerns, failed to give him any opportunity to address them, and failed to advocate for him with Carnival. The contents of Defendants' communications with Carnival and with Bohn concerning Mr. Savitt are within Defendants' exclusive knowledge and will be established in discovery.

42. On information and belief, Defendants profited from Mr. Savitt's removal, including by placing other comedians on their roster in the engagements, fallouts, and future opportunities that would otherwise have gone to Mr. Savitt, and by collecting commissions on those performers' compensation.

**E. Mr. Savitt's Losses**

43. As a result of Carnival's removal of Mr. Savitt from its roster, the following twelve engagements on Mr. Savitt's confirmed 2026 schedule were canceled. The amounts shown are the compensation Mr. Savitt would have received after deduction of Defendants' ten-percent commission:

| | | |
|---|---|---|
| Carnival Sunshine | May 27–30, 2026 | $1,683.00 |
| Carnival Sunshine | May 30–June 4, 2026 | $1,683.00 |
| Carnival Panorama | June 28–July 1, 2026 | $1,705.50 |
| Carnival Venezia | July 5–9, 2026 | $1,962.00 |
| Carnival Panorama | July 26–August 1, 2026 | $1,705.50 |
| Carnival Panorama | August 26–29, 2026 | $1,705.50 |
| Carnival Magic | October 3–6, 2026 | $1,683.00 |
| Carnival Magic | October 6–11, 2026 | $1,683.00 |
| Carnival Magic | November 22–25, 2026 | $1,683.00 |
| Carnival Magic | November 25–28, 2026 | $1,683.00 |
| Carnival Paradise | December 21–26, 2026 | $1,683.00 |
| Carnival Paradise | December 26–30, 2026 | $2,183.00 |
| **Total (12 engagements)** | | **$21,042.50** |

44. Because each cancellation was made more than fourteen days before the engagement's start date, Carnival paid Mr. Savitt nothing for any of the canceled engagements.

45. The canceled engagements represent only part of Mr. Savitt's loss. Defendants' conduct ended an established, recurring Carnival relationship that

paid Mr. Savitt $44,236.00, net of Defendants' commission, in 2025, and that he reasonably expected to continue. Measured by that figure, Mr. Savitt's lost Carnival earnings over the five years following his removal total not less than $221,180.00, before accounting for the fallout engagements and extra-show compensation he regularly earned and has also lost, to the extent not already reflected in that figure. Mr. Savitt has received no Carnival engagements since May 3, 2026. Further, Mr. Savitt's sustained future diminished earning capacity through the loss of XL-class Carnival bookings and higher compensation opportunities aboard Mardi Gras, Celebration, Jubilee, and comparable vessels. As a result of Defendants' actions, the other cruise lines will not hire him. He also has nonrefundable travel costs, cancellation expenses, additional representation costs, and reasonable expenses seeking replacement employment.

**F. Defendants' Refusal to Account or Make Mr. Savitt Whole**

46. In or about June 2026, Mr. Savitt raised with Defendants his concerns regarding Defendants' licensing status, the commissions they had taken, and the losses Defendants had caused him. On or about June 25, 2026, he gave Defendants until July 10, 2026 to respond. On or about July 3 or 4, 2026, Foster responded that Defendants would offer nothing, relying on the terms and conditions of Carnival's guest entertainer agreement, to which Defendants' own obligations to Mr. Savitt are not subject. Mr. Savitt sent Defendants written demands on July 4 and July 14, 2026. Defendants have not paid Mr. Savitt anything, and have not provided him with an accounting of the commissions they took or of their communications with Carnival concerning him.

47. On July 20, 2026, Mr. Savitt, acting without counsel, signed a Petition to Determine Controversy under California Labor Code § 1700.44, which the California Labor Commissioner filed on August 10, 2026 as TAC Case No. 52985 (the "TAC Proceeding"). In the TAC Proceeding, Mr. Savitt

seeks a determination that Defendants acted as an unlicensed talent agency in violation of the California Talent Agencies Act and an order requiring disgorgement of the commissions Defendants retained. On or about September 8, 2026, Foster served a written answer on behalf of himself and 21st Century, in which Defendants characterized their role as "purely administrative" and that of a "clearinghouse." That characterization is contradicted by Defendants' own contemporaneous correspondence described above.

48. This action asserts claims arising under the common law that are independent of the TAC Proceeding. Plaintiff does not ask this Court to determine the controversy pending before the Labor Commissioner, and reserves all rights and remedies available to him in the TAC Proceeding. To the extent any issue in this action is determined to fall within the Labor Commissioner's original jurisdiction, Plaintiff requests that the Court stay that portion of the action, rather than dismiss it, pending the Labor Commissioner's determination.

**FIRST CLAIM FOR RELIEF**

**Breach of Fiduciary Duty**

**(Against All Defendants)**

49. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

50. By undertaking to act as Mr. Savitt's agent and representative in his dealings with Carnival and others, by exercising control over his professional opportunities and his communications with Carnival, and by receiving and holding his compensation in their own accounts, Defendants became Mr. Savitt's fiduciaries. Foster, who personally performed and directed Defendants' services to Mr. Savitt and signed Mr. Savitt's Carnival agreements as his "Agent," owed those duties personally as well as through 21st Century.

51. As Mr. Savitt's fiduciaries, Defendants owed him duties of

undivided loyalty, utmost good faith, full and candid disclosure of all material facts, reasonable care, and a full accounting of all money received on his behalf. Those duties required Defendants, among other things, to act solely for Mr. Savitt's benefit in matters within the scope of the agency; to refrain from acting adversely to him or for the benefit of others in those matters; to disclose to him all facts material to the relationship, including their own lack of legal authority to act as a talent agency and any communications from Carnival affecting his standing; and to avoid, or fully disclose and obtain his informed consent to, any conflict of interest.

52. Defendants breached their fiduciary duties to Mr. Savitt by, among other things:

(a) failing to disclose, and actively concealing, that they were operating without the talent agency licenses required by Florida and California law, while collecting commissions on Mr. Savitt's earnings;

(b) failing to disclose to Mr. Savitt, timely and completely, any concerns or communications from Carnival regarding his performance or standing, and failing to give him an opportunity to address any such concerns;

(c) on information and belief, causing, procuring, encouraging, or acquiescing in Carnival's decision to remove Mr. Savitt from its roster, in order to serve their own interests and those of Bohn and of other performers on their roster;

(d) failing to advocate for Mr. Savitt with Carnival and instead abandoning him at the very moment he most needed his agent, by terminating his representation in the same communication in which they reported Carnival's decision;

(e) representing a roster of competing performers for the same

Carnival engagements without disclosing, or obtaining Mr. Savitt's informed consent to, the resulting conflicts of interest, and, on information and belief, steering opportunities that would otherwise have gone to Mr. Savitt to other performers;

(f) giving Mr. Savitt a pretextual or incomplete explanation for the loss of his Carnival engagements; and

(g) failing and refusing to account to Mr. Savitt for the commissions they retained from his compensation and for their communications with Carnival concerning him.

53. As a direct and proximate result of Defendants' breaches, Mr. Savitt has suffered damages in an amount to be proven at trial, but not less than $21,042.50 in canceled engagements and not less than $221,180.00 in lost Carnival earnings over five years (of which the canceled engagements are a part), together with lost fallout engagements and extra-show compensation.

54. Because Defendants breached their duty of loyalty, they are not entitled to retain the compensation they received for their services, and they must disgorge to Mr. Savitt all commissions and other compensation they took from his earnings from March 2022 through May 2026, in an amount to be determined through an accounting.

55. In doing the things alleged herein, Defendants acted with oppression, fraud, and malice within the meaning of California Civil Code § 3294, including by concealing material facts from their own principal with the intention of depriving him of property and legal rights. Mr. Savitt is therefore entitled to an award of punitive and exemplary damages in an amount sufficient to punish Defendants and deter similar conduct.

**SECOND CLAIM FOR RELIEF**

**Fraud (Concealment)**

**(Against All Defendants)**

56. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

57. Throughout the relationship, from early 2022 through May 4, 2026, Defendants, acting through Foster, concealed from Mr. Savitt the material fact that neither 21st Century nor Foster held the talent agency license required to conduct their business under Florida law or under California law.

58. Defendants had a duty to disclose that fact because (a) they were Mr. Savitt's agents and fiduciaries; (b) they had exclusive knowledge of their own licensing status, which was not known or reasonably accessible to Mr. Savitt; and (c) they made partial representations that were misleading without disclosure of that fact, including by repeatedly describing 21st Century as an "agency," Foster as a "Talent Representative" engaged in "Talent & Artist Representation," and their performers as a "roster," including in Foster's emails to Mr. Savitt of March 11, April 10, May 2, and May 4, 2026, in the formal Release from Representation dated May 4, 2026, and by signing Mr. Savitt's 2024, 2025, and 2026 Carnival agreements as his "Agent."

59. Defendants intentionally concealed their lack of licensure with the intent to induce Mr. Savitt to enter into and continue the Representation Agreement, to allow Defendants to receive his compensation, and to permit Defendants to retain ten percent of it.

60. Mr. Savitt was unaware of the concealed fact. Had he known it, he would not have entered into or continued the Representation Agreement and would not have permitted Defendants to retain any portion of his compensation. In reliance on Defendants' concealment, Mr. Savitt continued to entrust his professional opportunities and compensation to Defendants and permitted them

to retain commissions from his earnings from March 2022 through May 2026.

61. As a direct and proximate result of Defendants' concealment, Mr. Savitt has been damaged in an amount to be proven at trial, including, without limitation, the full amount of the commissions Defendants retained from his compensation.

62. Mr. Savitt did not discover, and in the exercise of reasonable diligence could not have discovered, the facts constituting this fraud until in or about June 2026. Mr. Savitt was entitled to rely on his agents and fiduciaries to deal with him honestly, and Defendants' affirmative self-description as an "agency" and "Talent Representative" prevented him from discovering the truth sooner.

63. Defendants' conduct was intentional, fraudulent, and malicious within the meaning of California Civil Code § 3294, entitling Mr. Savitt to punitive and exemplary damages.

**THIRD CLAIM FOR RELIEF**

**Intentional Interference with Prospective Economic Advantage**

**(Against All Defendants)**

64. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

65. Mr. Savitt had an established economic relationship with Carnival that carried the probability of substantial future economic benefit to him. Over more than four years, Carnival engaged Mr. Savitt repeatedly each year, renewed his Guest Entertainer agreement annually, raised his rate based on his ratings, regularly offered him fallout engagements and extra shows, and, as of May 2026, had booked him for twelve further engagements through December 2026. Because Carnival's bookings were subject to cancellation at Carnival's discretion on fourteen days' notice, Mr. Savitt's relationship with Carnival is properly characterized as a prospective economic relationship.

66. Defendants knew of Mr. Savitt's relationship with Carnival, of his twelve booked engagements, and of the economic value of that relationship to him, because they administered it.

67. On information and belief, Defendants, acting through Foster and in concert with Bohn, engaged in intentional conduct designed to disrupt that relationship, or knew that disruption was certain or substantially certain to result from their conduct, including by communicating to Carnival false or misleading information about Mr. Savitt and by encouraging or procuring Carnival's decision to remove him from its roster.

68. Defendants' conduct was wrongful by a legal measure independent of the interference itself. On information and belief, Defendants' communications to Carnival about Mr. Savitt included false or misleading statements of fact. In addition, Defendants were able to influence Carnival's decisions concerning Mr. Savitt only because they occupied the position of his "Agent of Record," a position they held while operating as a talent agency without the licenses required by Fla. Stat. § 468.403 and Cal. Lab. Code § 1700.5, and in breach of the fiduciary duties described above.

69. Defendants' conduct actually disrupted Mr. Savitt's relationship with Carnival. Carnival removed Mr. Savitt from its roster, canceled his twelve booked engagements, and has not engaged him since.

70. As a direct and proximate result of Defendants' conduct, Mr. Savitt has suffered damages in an amount to be proven at trial, including the $21,042.50 in canceled engagements and not less than $221,180.00 in lost Carnival earnings over five years (of which the canceled engagements are a part), together with lost fallout engagements and extra-show compensation.

71. Defendants acted with oppression, fraud, and malice within the meaning of California Civil Code § 3294, entitling Mr. Savitt to punitive and exemplary damages.

**FOURTH CLAIM FOR RELIEF**

**Accounting**

**(Against All Defendants)**

72. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

73. A fiduciary relationship existed between Mr. Savitt and Defendants, under which Defendants received and held money belonging to Mr. Savitt, including all compensation Carnival and any other payor paid for his performances from March 2022 through May 2026, and retained portions of it for themselves.

74. The amount of money Defendants received on Mr. Savitt's behalf, the amount they retained, and the amount due to Mr. Savitt cannot be ascertained without an accounting, because the relevant invoices, remittance records, bank records, and communications are in Defendants' exclusive possession, custody, and control. Mr. Savitt has demanded that Defendants account to him, and Defendants have refused.

75. Mr. Savitt is entitled to a full accounting from Defendants of (a) all amounts invoiced to and received from Carnival or any other person for Mr. Savitt's performances, including scheduled engagements, fallout engagements, and extra shows; (b) all commissions, fees, and other amounts Defendants retained from those receipts; (c) all amounts remitted to Mr. Savitt; and (d) all compensation Defendants received for engagements on which other performers replaced Mr. Savitt after May 4, 2026; and to payment of all amounts found due.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

a. Compensatory damages in an amount to be proven at trial, which

Plaintiff presently estimates at not less than $221,180.00, inclusive of the $21,042.50 in canceled engagements and exclusive of lost fallout and extra-show compensation;

b. Disgorgement and forfeiture of all commissions, fees, and other compensation Defendants received from or on account of Plaintiff's earnings from March 2022 through May 2026, and the imposition of a constructive trust over those amounts;

c. A full accounting as described in the Fourth Claim for Relief, and payment of all amounts found due;

d. Punitive and exemplary damages in an amount sufficient to punish Defendants and deter similar conduct;

e. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

f. Costs of suit; and

g. Such other and further relief as the Court deems just and proper.

Dated: October 22, 2026

Respectfully submitted,

Jamie Campbell, Esq. SBN 343318
JC Law, P.C.

/s/Jamie Campbell
Jamie Campbell, Esq. SBN 343318
7760 Hollywood Blvd., No. 303
Los Angeles, California
Tel 714.767.6807
jamie@jclawpc.com

The Roth Law Firm, PLLC

/s/Richard A. Roth
Richard A. Roth, Esq. (to be admitted *pro hac vice)*
295 Madison Avenue, Fl 2
New York, New York 10017
Tel.: (212) 542-8882
rich@rrothlaw.com

*Attorneys for Plaintiff*
*ADRIAN THOMAS SAVITT*

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 38-1, Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 21, 2026

Respectfully submitted,

Jamie Campbell, Esq. SBN 343318
JC Law, P.C.

/s/Jamie Campbell
Jamie Campbell, Esq. SBN 343318
7760 Hollywood Blvd., No. 303
Los Angeles, California
Tel 714.767.6807
jamie@jclawpc.com

The Roth Law Firm, PLLC

/s/Richard A. Roth
Richard A. Roth, Esq. (to be admitted *pro hac vice)*
295 Madison Avenue, Fl 2
New York, New York 10017
Tel.: (212) 542-8882
rich@rrothlaw.com

*Attorneys for Plaintiff*
*ADRIAN THOMAS SAVITT*